No. 33,159

W. M. GLENN, *Plaintiff,* v. FRANK J. RYAN, as Secretary of State, etc., *Defendant.*

(58 P. 2d 1077)

Opinion filed July 3, 1936.

*J. L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the plaintiff.

*Clarence V. Beck,* attorney general, and *Theo. S. Varner,* assistant attorney general, for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel the secretary of state to accept and file plaintiff's nomination papers as a Republican candidate for nomination at the coming primary election for a claimed unexpired term of the office of justice of the supreme court, position number three, that being the position held by the Hon. William A. Johnston under the designation of positions prescribed by R. S. 25-111, and prior to the adoption of the resolution hereafter mentioned.

In 1935 the legislature, taking cognizance of the long and distinguished service of the chief justice, William A. Johnston, adopted a resolution now appearing as Laws 1935, ch. 147. The preamble recites his term of service of more than fifty years as a member of this court, a term exceeding that of any jurist of a court of last resort of any state of the union or of the United States, his ability and unswerving loyalty and continuous devotion to the state, its laws and courts, and that physical frailties incident to advanced years have made it increasingly difficult for him to perform the arduous duties required of him as chief justice, his expressed hope he might be able to finish the term for which he was last elected, and—

"With a sense of gratitude for his long and valued services, and to express appreciation while it may be enjoyed, the state is willing for him to be relieved from active duty on the court for the remainder of his present term of service, if he so desires, without decrease for that time in his compensation."

The resolution proper is as follows:

"SECTION 1. That William A. Johnston, chief justice of the supreme court, if he so desires, and upon filing the statement as hereinafter provided, be and he hereby is relieved from active duty as justice of the supreme court for the remainder of his present term, and his salary as such justice shall not be diminished for that reason.

"SEC. 2. When the said William A. Johnston files with the secretary of state a statement in writing that he desires to accept the benefits of this resolution he shall be relieved of further active duty on the court, and the governor may appoint a justice of the supreme court as when a vacancy exists on that court."

Thereafter, desiring to accept the provisions of the above resolution, the chief justice, under date of June 29, 1935, filed his statement with the secretary of state accepting the benefits of the above resolution, effective at the close of the fiscal year, June 30, 1935.

We pause to note that in his statement he expressed the heartfelt appreciation of his wife and himself to the people of Kansas, and his regret that his ability to perform the duties of his office was no longer equal to the task.

On July 1, 1935, the Hon. Alfred M. Landon, governor of the state, exercising the permissive power of appointment conferred by the above resolution, appointed the Hon. Hugo T. Wedell, as "associate justice of the Kansas supreme court, postion No. 3, for the unexpired term, vice Chief Justice William A. Johnston." It may be observed that since the amendment of article 3, section 2, of our constitution in 1900, we have no "associate" justices. The supreme court since that date has been composed of seven justices, the justice who is senior in continuous term of service, or if two have so served, the senior in years, is chief justice.

Conceiving that the acceptance of the benefits of the above resolution by William A. Johnston constituted a vacancy in the office of justice of the supreme court, position number three, and that the power of the governor to fill the claimed vacancy was effective only until a successor could be elected and qualified (Const., art. 3, sec. 11; art. 2, sec. 19 and R. S. 25-312), the plaintiff tendered to the secretary of state nomination papers as a candidate for the Republican nomination for the claimed unexpired term. The secretary of state, acting on the advice of the attorney general that there was no vacancy, refused to file the papers. Thereafter, plaintiff filed his motion for a writ of mandamus to compel the acceptance and filing of the nomination papers by the secretary of state, and the performance of other statutory acts which would result in plaintiff's name appearing as a candidate for the Republican nomination to fill the claimed vacancy. Sufficiency of the nominating petitions, both as to form and number of signers is conceded, and the question presented is solely one of law as to whether there is a vacancy in the office for which nomination is sought.

The resolution embodied in Laws 1935, chapter 147, constitutes a departure from the usual course of legislation in Kansas, and a tribute to a long-serving public official of which no like instance is known to us or called to our attention. Plaintiff recognizes the power of the legislature to make the provisions contained in the resolution, and also to make the appropriation evidenced by Laws 1935, chapter 68, section 1; item 15, otherwise he would have no basis for the relief sought in his motion for the writ.

Owing to the unusual character of the legislation, little or no precedent exists, and such as does exist is not closely analogous. Both plaintiff and defendant recognize that whether there is an unexpired term for the position depends entirely upon the meaning to be given the above resolution, and to support their views each assumes problems based upon a state of facts not before us, and draws conclusions which he states must necessarily follow if his construction is not adopted. These involve the validity of the present appropriation act, the present status of the supreme court, etc. We mention them only to say that in the present action they are not involved, and anything said thereon would be *obiter dictum*. They will not be further discussed.

It needs no citation of authority to support the rule that in determining the construction to be given a statute the primary thing to be determined is what the legislature intended. In order for the plaintiff to prevail we must be able to read from the statute that William A. Johnston, by acceptance of the benefits of the act, so acted that a vacancy occurred, otherwise plaintiff must fail. The essence of section one of the resolution is that whenever William A. Johnston so desires, upon filing a requisite statement—

"he hereby is relieved from active duty as justice of the supreme court for the remainder of his present term, and his salary as such justice shall not be diminished for that reason."

It is quite evident that the legislature by the use of the above language meant something widely different from a resignation, for a resignation arises with the actor, includes no act of grace or benefit, and intends a final termination of relationship. One is relieved, however, where he is eased; to relieve one of official duties is not to oust him of official position, it is only to lighten his official burden. This may be accomplished in one of two ways, one by providing that the beneficiary shall not be compelled to perform certain duties, as seems to have been done in the instant case; the other by giving assistance so that the burden is lessened. This method was followed in the enactment of Laws 1887, ch. 148, and Laws 1889, ch. 246, both of which provided for the appointment of commissioners to aid and assist this court in the performance of its duties, each of said commissioners to receive a salary equal to the salary of a justice of this court.

That a surcease from duty was intended, rather than a surrender of his official rights, is further evident in this: The first section

confers on William A. Johnston a right to file the prescribed state-ment, and upon its filing he is "relieved from active duty." The second section provides that when he files the statement, he "shall be relieved of further active duty on the court." Had it been in-tended that his official life was to end upon filing the statement, why the use of the words "active duty" and "further active duty"?

Plaintiff's principal argument hinges on the last clause of section two, reading: "and the governor may appoint a justice of the supreme court as when a vacancy exists on that court." He argues that this is a legislative declaration a vacancy does exist. If the resolution created a vacancy, article 3, section 11 of our constitu-tion would require the governor to fill it by appointment and there would have been no need of putting into the resolution the clause, "The governor may appoint," etc. The very fact the clause is there is a clear indication the legislature did not think of the resolution as creating a vacancy. It may be observed that the power given the governor was a permission and not a mandate to make an appoint-ment. Conceivably the legislature may have felt that the governor should use his discretion and appoint some person to perform, at least in part, the duties from which the chief justice would be re-lieved, if he felt that the condition of the work of the court war-ranted. The secretary of state argues that what was intended was no more than that an appointment should be made in the same manner as when there is a vacancy by death, resignation or re-moval. If what was provided in the entire resolution did not result in a vacancy, then the secretary of state's contention is logical and consistent. It will not be denied that general rules of statutory construction demand a logical and consistent interpretation of all the words, phrases, clauses and sentences of the act under scrutiny. Applying such rules to the interpretation of the resolution before us, we are of the opinion that the acceptance of the benefits of the resolution by William A. Johnston did not create a vacancy in the office of justice of the supreme court, position number three, that therefore there is no unexpired term to be filled at the coming pri-mary and general elections, and that the writ prayed for should be denied. It is so ordered.

WEDELL, J., not sitting.